# Supreme Court of Florida

_____

No. SC13-2082
_____

**MARVIN CASTELLANOS,**
Petitioner,

vs.

**NEXT DOOR COMPANY, et al.,**
Respondents.

[April 28, 2016]

PARIENTE, J.

This case asks us to evaluate the constitutionality of the mandatory fee schedule in section 440.34, Florida Statutes (2009), which eliminates the requirement of a reasonable attorney's fee to the successful claimant. Considering that the right of a claimant to obtain a reasonable attorney's fee has been a critical feature of the workers' compensation law, we conclude that the mandatory fee schedule in section 440.34, which creates an irrebuttable presumption that precludes any consideration of whether the fee award is reasonable to compensate the attorney, is unconstitutional under both the Florida and United States

Constitutions as a violation of due process.  See art. I, § 9, Fla. Const.; U.S. Const.

amend. XIV, § 1.[1]

This issue arises out of a question certified by the First District Court of

Appeal to be of great public importance,[2] which we rephrase as follows:

1. Castellanos challenges the constitutionality of the statute on numerous grounds, arguing that it violates the right of access to courts under article I, section 21, of the Florida Constitution; the separation of powers doctrine; due process; equal protection; the right to contract and speak freely; the right to be rewarded for industry; and constitutes an unconstitutional taking of property.  We decide the constitutional issue in this case on the basis of the constitutional rights of the claimant under due process and do not address the other grounds raised.

2. The following question was certified by the First District:

WHETHER THE AWARD OF ATTORNEY'S FEES IN THIS CASE IS ADEQUATE, AND CONSISTENT WITH THE ACCESS TO COURTS, DUE PROCESS, EQUAL PROTECTION, AND OTHER REQUIREMENTS OF THE FLORIDA AND FEDERAL CONSTITUTIONS.

Castellanos v. Next Door Co./Amerisure Ins. Co., 124 So. 3d 392, 394 (Fla. 1st DCA 2013).  We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.

Clearly this issue is affecting numerous claimants.  Since Castellanos, the First District has certified that its disposition in eighteen additional cases passes upon the same question: Joe Taylor v. Rodney Gunder Plastering & Stucco, LLC, No. 1D15-5895, 2016 WL 1579228 (Fla.1st DCA Apr. 20, 2016); Stephens v. Dominos Pizza, No. 1D12-3239, 2016 WL 1169975 (Fla. 1st DCA Mar. 24, 2016); De Mesa v. Dollar Tree Stores, Inc./Sedgwick CMS, No. 1D15-5635, 2016 WL 1169978 (Fla. 1st DCA Mar. 24, 2016); Shannon v. Hillsborough Area Reg'l Transit Auth. et al., 184 So. 3d 665 (Fla. 1st DCA 2016); Perez v. Univision Network LP/Sentry Claims Service, 184 So. 3d 653 (Fla. 1st DCA 2016); Weimar v. L'Oreal USA S/D, Inc., 176 So. 3d 1288 (Fla. 1st DCA 2015); Rankine v. AMR Corp., 176 So. 3d 392 (Fla. 1st DCA 2015); Zaldivar v. Prieto, 174 So. 3d 1126 (Fla. 1st DCA 2015); Gallagher Law Grp., P.A. v. Vic Renovations, 174 So. 3d 1124 (Fla. 1st DCA 2015); Zaldivar v. Dyke Indus., Inc., 168 So. 3d 336 (Fla. 1st

WHETHER SECTION 440.34, FLORIDA STATUTES (2009), WHICH MANDATES A CONCLUSIVE FEE SCHEDULE FOR AWARDING ATTORNEY'S FEES TO THE CLAIMANT IN A WORKERS' COMPENSATION CASE, IS UNCONSTITUTIONAL AS A DENIAL OF DUE PROCESS UNDER THE FLORIDA AND UNITED STATES CONSTITUTIONS.

The Petitioner, Marvin Castellanos, was injured during the course of his employment with the Respondent, Next Door Company. Through the assistance of an attorney, Castellanos prevailed in his workers' compensation claim, after the attorney successfully refuted numerous defenses raised by the employer and its insurance carrier. However, because section 440.34 limits a claimant's ability to recover attorney's fees to a sliding scale based on the amount of workers' compensation benefits obtained, the fee awarded to Castellanos' attorney amounted to only $1.53 per hour for 107.2 hours of work determined by the Judge of Compensation Claims (JCC) to be "reasonable and necessary" in litigating this complex case.

---

DCA 2015); Ferrer v. Truly Nolen of Am., Inc., 164 So. 3d 700 (Fla. 1st DCA 2015); Flores v. Vanlex Clothing Corp., 160 So. 3d 961 (Fla. 1st DCA 2015); Mayorga v. Sun Elecs. Int'l, Inc., 159 So. 3d 1032 (Fla. 1st DCA 2015); Leon v. Miami Dade Pub. Schs., 159 So. 3d 422 (Fla. 1st DCA 2015); Gonzalez v. McDonald's, 156 So. 3d 1127 (Fla. 1st DCA 2015); Diaz v. Palmetto Gen. Hosp./Sedgwick CMS, 146 So. 3d 1288 (Fla. 1st DCA 2014); Pfeffer v. Labor Ready Se., Inc., 155 So. 3d 1155 (Fla. 1st DCA 2014); Richardson v. Aramark/Sedgewick CMS, 134 So. 3d 1133 (Fla. 1st DCA 2014).

Castellanos had no ability to challenge the reasonableness of the $1.53 hourly rate, and both the JCC and the First District were precluded by section 440.34 from assessing whether the fee award—calculated in strict compliance with the statutory fee schedule—was reasonable. Instead, the statute presumes that the ultimate fee will always be reasonable to compensate the attorney, without providing any mechanism for refutation.

The right of a claimant to obtain a reasonable attorney's fee when successful in securing benefits has been considered a critical feature of the workers' compensation law since 1941. See Murray v. Mariner Health, 994 So. 2d 1051, 1057-58 (Fla. 2008). From its outset, the workers' compensation law was designed to assure, as the current legislative statement of purpose provides, "the quick and efficient delivery of disability and medical benefits to an injured worker." § 440.015, Fla. Stat. (2009).

Yet, while the Legislature has continued to enunciate this purpose, in reality, the workers' compensation system has become increasingly complex to the detriment of the claimant, who depends on the assistance of a competent attorney to navigate the thicket.[3] Indeed, as this Court long ago observed, allowing a

_____

3. To name just a few of the ways in which the workers' compensation system has become increasingly complex and difficult, if not impossible, for an injured worker to successfully navigate without the assistance of an attorney: (1) the elimination of the provision that the workers' compensation law be liberally construed in favor of the injured worker, § 440.015, Fla. Stat.; (2) reductions in the

claimant to "engage competent legal assistance" actually "discourages the carrier from unnecessarily resisting claims" and encourages attorneys to undertake representation in non-frivolous claims, "realizing that a reasonable fee will be paid for [their] labor." Ohio Cas. Grp. v. Parrish, 350 So. 2d 466, 470 (Fla. 1977).

We reject the assertion of Justice Polston's dissenting opinion that our holding "turns this Court's well-established precedent regarding facial challenges on its head." Dissenting op. at 53 (Polston, J.). It is immaterial to our holding whether, as Justice Polston points out, the statutory fee schedule could, in some cases, result in a constitutionally adequate fee. It certainly could.

But the facial constitutional due process issue, based on our well-established precedent regarding conclusive irrebuttable presumptions, is that the statute precludes every injured worker from challenging the reasonableness of the fee award. See Recchi Am. Inc. v. Hall, 692 So. 2d 153, 154 (Fla. 1997) (clarifying that its holding "invalidates the irrebuttable presumption altogether," including as

---

duration of temporary benefits, § 440.15(2)(a), Fla. Stat.; (3) an extensive fraud and penalty provision, § 440.105, Fla. Stat.; (4) a heightened standard of "major contributing cause" that applies in a majority of cases rather than the less stringent "proximate cause" standard in civil cases, § 440.09(1), Fla. Stat.; (5) a heightened burden of proof of "clear and convincing evidence" in some types of cases, §§ 440.02(1), 440.09(1), Fla. Stat.; (6) the elimination of the "opt out" provision, §§ 440.015, 440.03, Fla. Stat.; and (7) the addition of an offer of settlement provision that allows only the employer, and not the claimant, to make an offer to settle, § 440.34(2), Fla. Stat.

applied to certain situations). It is the irrebuttable statutory presumption—not the ultimate statutory fee awarded in a given case—that we hold unconstitutional.

The contrary approach embraced by Justice Polston's dissenting opinion, which leaves open the possibility of an as applied challenge to the statute on a case-by-case basis, would be both unworkable and without any standards for determining when the fee schedule produces a constitutionally inadequate fee. Simply put, the statute is not susceptible to an as applied challenge, but instead fits into our precedent governing the constitutionality of irrebuttable presumptions, which is a distinct body of case law that differs from the typical "facial" versus "as applied" cases cited by Justice Polston's dissent.

We also reject the assertion of Justice Canady's dissenting opinion that we "fail[] to directly address the actual policy of the statute." Dissenting op. at 41 (Canady, J.). Rather, it is Justice Canady's dissent that fails to acknowledge that a reasonable attorney's fee has always been the linchpin to the constitutionality of the workers' compensation law.

It is undeniable that without the right to an attorney with a reasonable fee, the workers' compensation law can no longer "assure the quick and efficient delivery of disability and medical benefits to an injured worker," as is the stated legislative intent in section 440.015, Florida Statutes (2009), nor can it provide workers with "full medical care and wage-loss payments for total or partial

disability regardless of fault and without the delay and uncertainty of tort litigation." Martinez v. Scanlan, 582 So. 2d 1167, 1172 (Fla. 1991).

The statute prevents every injured worker from challenging the reasonableness of the fee award in his or her individual case—an issue of serious constitutional concern given the critical importance, as a key feature of the workers' compensation statutory scheme, of a reasonable attorney's fee for the successful claimant. Accordingly, we answer the rephrased certified question in the affirmative, quash the First District's decision upholding the patently unreasonable $1.53 hourly fee award, and direct that this case be remanded to the JCC for entry of a reasonable attorney's fee.

## I. FACTS AND PROCEDURAL HISTORY

In 2009, Marvin Castellanos, then forty-six years old, suffered an injury during the course of his employment as a press break operator for Next Door Company, a manufacturer of metal doors and door frames located in Miami, Florida. Castellanos requested medical treatment, and Next Door authorized him to seek treatment at the Physician's Health Center in Hialeah, Florida, the health insurance clinic designated for medical diagnoses by Next Door's workers' compensation insurance carrier, Amerisure Insurance Company. At the clinic, Castellanos was diagnosed with multiple contusions to his head, neck, and right

shoulder. A doctor requested authorization of medically necessary treatment, including x-rays, medications, and physical therapy.

Next Door, as the employer, and Amerisure, as Next Door's insurance carrier (collectively, the "E/C"), failed to authorize its own doctor's recommendations, and Castellanos subsequently filed a petition for benefits, seeking a compensability determination for temporary total or partial disability benefits, along with costs and attorney's fees. The E/C filed a response to the petition, denying the claim based on sections 440.09(4) (intentional acts) and 440.105(4)(b)9. (fraud), Florida Statutes (2009), ultimately asserting that Castellanos was responsible for his own injuries.

The parties subsequently filed a stipulation, in which the E/C raised twelve defenses. A final hearing was then held before the JCC, in which numerous depositions, exhibits, and live testimony were submitted for consideration.

In its Final Compensation Order, the JCC determined that Castellanos was entitled to be compensated by the E/C for his injuries and was therefore entitled to recover attorney's fees and costs from the E/C. The JCC explicitly found that Castellanos' attorney was successful in securing compensability and defeating all of the E/C's defenses, and retained jurisdiction to determine the amount of the attorney's fee award.

Based on the JCC's finding of compensability, Castellanos filed a motion for attorney's fees, seeking an hourly fee of $350 for the services of his attorney. Section 440.34, however, strictly constrains an award of attorney's fees to the claimant's attorney, requiring the fee to be calculated in conformance with the amount of benefits obtained.

Specifically, subsection (3) of section 440.34 was amended in 2009 to remove the longstanding requirement that the fee be "reasonable" and instead to provide, except for disputed medical-only claims, that the fee equal the amount provided for in subsection (1), which sets forth the following sliding scale fee schedule:

> A fee, gratuity, or other consideration may not be paid for a claimant in connection with any proceedings arising under this chapter, unless approved by the judge of compensation claims or court having jurisdiction over such proceedings. <u>Any attorney's fee approved by a judge of compensation claims for benefits secured on behalf of a claimant must equal to 20 percent of the first $5,000 of the amount of the benefits secured, 15 percent of the next $5,000 of the amount of the benefits secured, 10 percent of the remaining amount of the benefits secured to be provided during the first 10 years after the date the claim is filed, and 5 percent of the benefits secured after 10 years. The judge of compensation claims shall not approve a compensation order, a joint stipulation for lump-sum settlement, a stipulation or agreement between a claimant and his or her attorney, or any other agreement related to benefits under this chapter which provides for an attorney's fee in excess of the amount permitted by this section.</u> The judge of compensation claims is not required to approve any retainer agreement between the claimant and his or her attorney. The retainer agreement as to fees and costs may not be for compensation in excess of the amount allowed under this subsection or subsection (7).

§ 440.34(1), Fla. Stat. (emphasis added). Application of the fee schedule in this case resulted in a statutory fee of $1.53 per hour.

In support of his motion for attorney's fees, which argued that an award limited to the statutory fee would be unreasonable and manifestly unjust, Castellanos presented expert testimony from attorneys James Fee and Brian Sutter. Fee testified that there is "no way on this planet" that Castellanos could have prevailed in obtaining benefits "without the skilled and tenacious representation" of an attorney, based on "the onslaught of defenses that were asserted." He agreed that the 107.2 hours claimed by Castellanos' attorney were reasonable and necessary and an "exceedingly efficient use of time" given that "this was a very difficult case."

Sutter testified that it is "absolutely illusory to think" that a claimant could present his case without counsel "because of all the dangers and pitfalls" of the workers' compensation law. He further stated that fees under $2.00 an hour, such as the statutory fee in this case, are "absurd" and "manifestly unjust," and "would provide an extreme chilling effect" that would "prevent any attorney from handling a similar case in the future."

Attorney Jeff Appell testified as an expert witness on behalf of the E/C. When asked what percentage of workers' compensation cases showed claimants to be successful in prosecuting their claims without an attorney, Appell responded

that, although he regularly reviewed JCC orders, "I can't say that I've seen one that's been entirely successful," and, "as far as litigating a complicated case throughout, I honestly haven't seen it." He agreed that a statutory fee as low as the one in this case was "an unreasonably low hourly rate" and "an absurd result."

After hearing the testimony and considering the evidence and the law, the JCC issued an order awarding fees, finding that Castellanos "ultimately prevailed in obtaining a finding of compensability, a necessary precursor to obtaining benefits." According to the JCC, in order to obtain this result, Castellanos "had to overcome between 13 and 16 different defenses raised by the E/C throughout the course of litigation." The JCC further found that it was "highly unlikely that [Castellanos] could have succeeded and obtained the favorable result he did without the assistance of capable counsel."

Constrained to the statutory fee schedule, however, the JCC found that Castellanos was limited to an attorney's fee of $164.54, based on the application of the conclusive fee schedule to the actual value of benefits secured of $822.70. Nevertheless, in its order, the JCC "fully accept[ed] the notion that 'Lawyers can't work for $1.30 an hour,' " and stated that Castellanos' attorney "is an exceptionally skilled, highly respected practitioner who has been awarded as much as $350 to $400 an hour for his success in workers' compensation cases." The JCC, in addition, found that "[t]here is no question . . . that the 107.2 hours

expended by his firm . . . were reasonable and necessary," and that these hours constituted an "exceedingly efficient use of time," which was "wholly consistent with the 115.20 defense hours documented" by counsel for the E/C.

But as an executive branch official, the JCC had no authority to address Castellanos' claim that section 440.34, and the resulting $1.53 hourly fee, was unconstitutional. See Ariston v. Allied Bldg. Crafts, 825 So. 2d 435, 438 (Fla. 1st DCA 2002) ("A JCC clearly does not have jurisdiction to declare a state statute unconstitutional or violative of federal law."). Castellanos thus appealed the JCC's order to the First District, raising the constitutional claim.

The First District affirmed the JCC's decision to award "only $164.54 for 107.2 hours of legal work reasonably necessary to secure the claimant's workers' compensation benefits," holding that "the statute required this result" and that the court was "bound by precedent to uphold the award, however inadequate it may be as a practical matter." Castellanos, 124 So. 3d at 393. In so doing, the First District recognized that there were important constitutional issues presented by this case that warranted this Court to determine the constitutionality of the current attorney's fee statute. Id. at 394. We granted review and now hold that the statute is unconstitutional under both the state and federal constitutions as a violation of due process.

## II. ANALYSIS

Our review of the constitutionality of section 440.34 is de novo.  See

Graham v. Haridopolos, 108 So. 3d 597, 603 (Fla. 2013).  We begin our analysis

by tracing the history of awarding attorney's fees to the claimant under our state's

workers' compensation law, culminating in the Legislature's 2009 elimination of

the requirement that the fee be "reasonable."  Then, we consider whether the

statute, as amended in 2009, creates an unconstitutional, irrebuttable presumption

in violation of due process of law.  Finally, concluding that the statute is

unconstitutional, we address the remedy.

### A.  History of Awarding Attorney's Fees to the Claimant Under Florida's Workers' Compensation Law

In 1935, the Legislature adopted the workers' compensation law to provide

"simple, expeditious" relief to the injured worker.  Lee Eng'g & Constr. Co. v.

Fellows, 209 So. 2d 454, 456 (Fla. 1968).  As an integral part of that goal from

1941 until 2009, the Legislature provided for an award of a reasonable attorney's

fee to an injured worker who was successful in obtaining workers' compensation

benefits.

In the eighty years since the enactment of the workers' compensation law,

however, the statutory scheme has become increasingly complex.  And although

the Legislature has now eliminated any requirement that attorney's fees awarded to

an injured worker prevailing in his or her claim for benefits must be "reasonable," the Legislature's expressed intent for the workers' compensation law has remained unchanged:

> It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the <u>quick and efficient delivery of disability and medical benefits</u> to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer. . . . The workers' compensation system in Florida is based on a <u>mutual renunciation of common-law rights and defenses</u> by employers and employees alike. . . . It is the intent of the Legislature to <u>ensure the prompt delivery of benefits</u> to the injured worker.

§ 440.015, Fla. Stat. (emphasis added).

In <u>Murray</u>, 994 So. 2d at 1057, which was the last time this Court addressed the attorney's fee provision, we summarized the statutory history of awarding attorney's fees to the claimant, explaining that the Legislature initially adopted this provision to ensure that the injured worker, rather than his or her attorney, would actually receive the bulk of the compensation award. We stated:

> The theory underlying the Act was that a claimant did not need an attorney and could alone navigate the procedures to obtain the benefits to which he or she was entitled under the law. Thus, originally, when a claimant hired an attorney, the claimant's attorney fee was the obligation of the claimant. The Legislature, however, was concerned that the bulk of the compensation benefit go to the claimant, not his attorney. Accordingly, to protect a claimant's compensation award, the Legislature, from the original adoption of the Act, gave the JCC or relevant administrative body, however denominated at the time, approval oversight of the amount a claimant paid to his attorney. <u>See</u> ch. 17481, § 34, Laws of Fla. (1935).

Id. (citation omitted).

In 1941, as it became clear that an injured worker needed the assistance of an attorney to navigate the workers' compensation system, the Legislature significantly revised the workers' compensation law to "mandate[] that in some instances, the employer/carrier should pay for the claimant to have an attorney." Id. At that time, the Legislature provided as follows:

> If the employer or carrier shall file a notice of controversy as provided in Section 20 of this Act, or shall decline to pay a claim on or before the 21st day after they have notice of same, or shall otherwise resist unsuccessfully the payment of compensation, and the injured person shall have employed an attorney at law in the successful prosecution of his claim, there shall, in addition to the award for compensation, be awarded [a] reasonable attorney's fee, to be approved by the Commission which may be paid direct to the attorney for the claimant in a lump sum. If any proceedings are had for review of any claim, award or compensation order before any Court, the Court may allow or increase the attorney's fees, in its discretion, which fees shall be in addition to the compensation paid the claimant, and shall be paid as the Court may direct.

Ch. 20672, § 11(a), Laws of Fla. (1941) (emphasis added).

"As the First District noted regarding a subsequent version of this provision, 'The legislative determination that a fee is payable by the employer/carrier in the circumstances enumerated in [this subsection] reflects a public policy decision that claimants are entitled to and are in need of counsel under those conditions.' " Murray, 994 So. 2d at 1058 (quoting Pilon v. Okeelanta Corp., 574 So. 2d 1200, 1201 (Fla. 1st DCA 1991)). Indeed, the First District has stated that, especially in

- 15 -

a "lengthy and expensive contest" with an E/C, a claimant proceeding "without the aid of competent counsel" would be as "helpless as a turtle on its back." Davis v. Keeto, Inc., 463 So. 2d 368, 371 (Fla. 1st DCA 1985) (quoting Neylon v. Ford Motor Co., 99 A.2d 664, 665 (N.J. Super. Ct. App. Div. 1953)).

This Court, in Ohio Casualty Group, noted that the award of a "reasonable attorney's fee" was

> enacted to enable an injured employee who has not received an equitable compensation award to engage competent legal assistance and, in addition, to penalize a recalcitrant employer. If the services of an attorney become necessary, and the carrier is ordered to pay compensation, attorney's fees must be assessed against the carrier so that the benefits awarded the employee will constitute a net recovery. Thus, in adding attorney's fees to the injured worker's compensation award, [the provision] discourages the carrier from unnecessarily resisting claims in an attempt to force a settlement upon an injured worker. In addition, if the worker has a meritorious case, an attorney will be inclined to represent him, realizing that a reasonable fee will be paid for his labor and not deducted from perhaps a modest benefit due the claimant. Conversely, if the attorney believes the claim is frivolous, he would be inclined to decline representation.

350 So. 2d at 470 (emphasis added) (citations omitted).

This Court has long recognized the factors to be considered in determining the reasonableness of an attorney's fee award under the statute. In Florida Silica Sand Co. v. Parker, 118 So. 2d 2, 4 (Fla. 1960), this Court concluded that Canon 12 of the Canons of Professional Ethics, the predecessor to rule 4-1.5 of the Rules Regulating The Florida Bar—the ethical rule governing attorneys' fees—was a "safe guide in fixing the amount of [E/C-paid] fees" awarded to the claimant. This

- 16 -

Court noted that the Florida Industrial Commission had promulgated a minimum schedule of fees to be used as a guide by the JCC and found that "[s]uch a schedule is helpful but is not conclusive." Id. at 5. "Innumerable economic factors," this Court stated, "enter into the fixing of reasonable fees in one section of the State and in one community which might not be present in others." Id.

In addition to the minimum schedule, this Court explained that "it appears to us that supplemental evidence should be presented." Id. This Court specifically noted the principle that, "especially in this type of matter[,] fees should be carefully considered so that on the one hand they will not be so low as to lack attraction for capable and experienced lawyers to represent workmen's compensation claimants" while, "[o]n the other hand, they should not be so high as to reflect adversely on the profession or in actuality to enter disproportionately into the cost of maintaining the workmen's compensation program." Id. at 4.

Then, in Lee Engineering, this Court rejected the strict application of a contingent percentage of the benefit award based on a schedule of minimum fees, holding that a "schedule of fees . . . was helpful but unreliable" and remanding for the determination of a reasonable attorney's fee. 209 So. 2d at 458-59. According to this Court, a statutory fee schedule is "less sensitive to the changing needs of the program," and, "in the absence of a stipulation or other evidence, is not an appropriate method for fixing a fee in Workmen's Compensation cases." Id. at

- 17 -

458. Reaffirming <u>Florida Silica Sand</u>, this Court concluded that the factors set forth in Canon 12 of the Canons of Professional Ethics, the predecessor to rule 4-1.5, must be considered to determine whether an attorney's fee is reasonable and stated that findings by the JCC to support the award are required. <u>Id.</u> at 458-59.

Ironically, the <u>Lee Engineering</u> decision was a response to what this Court perceived as "excessive" attorney's fees. <u>Id.</u> at 457. In 1977, responding to this Court's decision in <u>Lee Engineering</u>, the Legislature significantly revised section 440.34 to add discretionary factors the JCC must consider when increasing or decreasing the fee, but also added a statutory formula to be used as the starting point for determining a reasonable attorney's fee award for a successful claimant:

> (1) If the employer or carrier shall file notice of controversy as provided in s. 440.20, or shall decline to pay a claim on or before the 21st day after they have notice of same, or shall otherwise resist unsuccessfully the payment of compensation, and the <u>claimant</u> <s>injured person</s> shall have employed an attorney at law in the successful prosecution of the claim, there shall, in addition to the award for compensation<u>,</u> be awarded <u>a</u> reasonable attorney's fee <u>of 25 percent of the first $5,000 of the amount of the benefits secured, 20 percent of the next $5,000 of the amount of the benefits secured, and 15 percent of the remaining amount of the benefits secured</u>, to be approved by the judge of industrial claims<u>,</u> which <u>fee</u> may be paid direct to the attorney for the claimant in a lump sum. <u>However, the judge of industrial claims shall consider the following factors in each case and may increase or decrease the attorney's fee if in his judgment the circumstances of the particular case warrant such action:</u>
> > <u>(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.</u>
> > <u>(b) The likelihood, if apparent to the claimant, that the acceptance of the particular employment will</u>

> preclude employment of the lawyer by others or cause antagonisms with other clients.
>
> (c) The fee customarily charged in the locality for similar legal services.
>
> (d) The amount involved in the controversy and the benefits resulting to the claimant.
>
> (e) The time limitation imposed by the claimant or the circumstances.
>
> (f) The nature and length of the professional relationship with the claimant.
>
> (g) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (h) The contingency or certainty of a fee.

Ch. 77–290, § 9, at 1293-94, Laws of Fla. (statutory additions underlined; statutory deletions struck-through).

"Thus, to determine a reasonable fee, the JCC applied the formula and then increased or decreased the amount after consideration of the factors in order to determine a reasonable fee." Murray, 994 So. 2d at 1059. As the First District noted, the sliding fee schedule "embodies a legislative intent to standardize fees." Fiesta Fashions, Inc. v. Capin, 450 So. 2d 1128, 1129 (Fla. 1st DCA 1984).

Two years after codifying the Lee Engineering factors, the Legislature again significantly amended the statute, in 1979, to limit entitlement to "a reasonable attorney's fee from a carrier or employer" to three conditions:

> (a) Against whom he successfully asserts a claim for medical benefits only, if the claimant has not filed or is not entitled to file at such time which does not include a claim for disability, permanent impairment, or wage-loss, or death benefits, arising out of the same accident; or

- 19 -

(b) In cases where the deputy commissioner issues ~~concludes by the issuance of~~ an order finding that a carrier has acted in bad faith with regard to handling an injured worker's claim and the injured worker has suffered economic loss. For the purposes of this paragraph, "bad faith" means conduct by the carrier in the handling of a claim which amounts to fraud, malice, oppression, or willful, wanton or reckless disregard of ~~for~~ the rights of the claimant. Any determination of bad faith shall be made by the deputy commissioner through a separate fact-finding proceeding; or

(c) In a proceeding where a carrier or employer denies that an injury occurred for which compensation benefits are payable, and the claimant prevails on the issue of compensability ~~coverage~~.

Ch. 79-312, § 15, at 1657, Laws of Fla. (statutory additions underlined; statutory deletions struck-through).

The Legislature also revised section 440.34(4) to provide a penalty to restrict payment for services only to fees approved by the JCC:

Any person: (a) [w]ho receives any fees or other consideration or any gratuity on account of services so rendered, unless such consideration or gratuity is approved by the deputy commissioner, the commission, or court; or (b) [w]ho makes it a business to solicit employment for a lawyer or for himself or herself in respect of any claim or award for compensation, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Ch. 79-312, § 15, at 1658, Laws of Fla. (statutory additions underlined). Then, in 1980, the Legislature revised section 440.34(2) to include language intended to limit the amount of the attorney's fee award: "In awarding a reasonable attorney's fee, the deputy commissioner shall consider only those benefits to the claimant the attorney is responsible for securing." Ch. 80-236, § 14, Laws of Fla.

- 20 -

In 1993, the Legislature again revised the statute, this time to reduce the percentage amounts for attorney's fees in the sliding schedule:

> [A]ny attorney's fee approved by a judge of compensation claims for services rendered to a claimant must shall be equal to 20 25 percent of the first $5,000 of the amount of the benefits secured, 15 20 percent of the next $5,000 of the amount of the benefits secured, 10 and 15 percent of the remaining amount of the benefits secured to be provided during the first 10 years after the date the claim is filed, and 5 percent of the benefits secured after 10 years.

Ch. 93-415, § 34, at 154 Laws of Fla. (statutory additions underlined; statutory deletions struck-through).

A decade later, setting the stage for the current statute, the Legislature in 2003 implemented other changes to the workers' compensation law following the 2003 Governor's Commission on Workers' Compensation Reform. Among the many changes made in that legislation to the entire workers' compensation law, the Legislature deleted reference in the attorney's fee provision to consideration of the reasonable fee factors; required the fee to be based on the benefits secured; and restricted the JCC's authority to approve fee awards based only on a statutory formula, while also providing for an alternative fee of a maximum of $1,500 if the claimant successfully asserted a claim solely for medical benefits. Ch. 2003-412, § 6, Laws of Fla.

In Murray, 994 So. 2d 1051, this Court was asked to consider the constitutionality of the 2003 amendments to the attorney's fee statute, which

- 21 -

deleted the <u>Lee Engineering</u> factors to be used in determining whether the fee award was reasonable. <u>Murray</u> involved a claimant who hired an attorney and prevailed after the employer and its insurance carrier denied workers' compensation benefits. <u>Id.</u> at 1053-54. The JCC then calculated the claimant's award of attorney's fees in accordance with the statutory formula, finding that although the claimant's counsel expended eighty hours of reasonable and necessary time on the case, the ultimate fee award was governed by the statutory formula set forth in section 440.34(1). <u>Id.</u> at 1054. Thus, the JCC awarded attorney's fees in the amount of $684.84. <u>Id.</u> at 1055.

Noting that this equated to an hourly rate of only $8.11 because of the low monetary value of the benefits obtained, the JCC commented:

> Given that this was a very complex case, with difficult issues, very contingent, required a highly skilled practitioner and that [the claimant's] attorney enjoys an outstanding reputation as a highly skilled and experienced workers' compensation practitioner, an attorney fee of $8.11 per hour would on its face . . . hardly appear to be "reasonable." It would appear to be "manifestly unfair."

<u>Id.</u> at 1055-56 (quoting <u>Murray v. Mariner Health</u>, OJCC Case No. 04–000323DFT (Fla. Div. of Admin. Hearings Compensation Order filed Jan. 17, 2006) at 5). Evidence in <u>Murray</u> also showed that the E/C paid its attorney $16,050—135 hours at $125 an hour—in the unsuccessful effort to resist paying benefits. <u>Id.</u> at 1055.

After the First District affirmed the $8.11 hourly fee award for the claimant's attorney, this Court held that the statute was ambiguous—section

- 22 -

440.34(3) stated that the claimant was entitled to a "reasonable attorney fee," while section 440.34(1) stated that any attorney's fee approved by the JCC "must equal" the statutory formula. Id. at 1057. "It is obvious," this Court stated, "that applying the formula in all cases will not result in the determination of reasonable attorney fees in all cases." Id. To the contrary, applying the formula will in some circumstances "result in inadequate fees," while in other circumstances, "applying the formula will result in excessive fees." Id.

Recognizing the principle of statutory construction that it will construe statutes in a manner that avoids a holding of unconstitutionality, this Court declined to consider the constitutional challenge. Id. at 1053. Instead, this Court resolved the statutory ambiguity in favor of section 440.34(3), holding that the claimant was entitled to recover a reasonable attorney's fee; that a reasonable attorney's fee for a claimant was to be determined using the factors set forth in rule 4-1.5 of the Rules Regulating The Florida Bar, rather than using the statutory formula; and that reasonable attorney's fees for claimants, when not otherwise defined in the workers' compensation statute, are to be determined using the factors set forth in rule 4-1.5. Id. at 1061-62.

Following Murray, the Legislature in 2009 removed any ambiguity as to its intent. Deleting the word "reasonable" in relation to attorney's fees, the Legislature provided that a claimant is entitled to recover only "an a reasonable

attorney's fee <u>in an amount equal to the amount provided for in subsection (1) or</u> <u>subsection (7)</u> from a carrier or employer." Ch. 2009-94, § 1, Laws of Fla. (statutory additions underlined; statutory deletions struck-through). Subsection (1) requires the fee to be calculated in strict conformance with the fee schedule, and subsection (7) applies solely to the $1500 flat fee for "disputed medical-only claims."

The Legislature has, thus, eliminated any consideration of reasonableness and removed any discretion from the JCC, or the judiciary on review, to alter the fee award in cases where the sliding scale based on benefits obtained results in either a clearly inadequate or a clearly excessive fee. Confronted again with a constitutional challenge to the statute, we must now determine whether the complete elimination of any ability of either the JCC or the reviewing court to deviate from the statutory formula, even when the amount of the fee is determined to be unreasonable, is unconstitutional. We hold that it is.

### B. Violation of Due Process

Section 440.34 provides a fee schedule that must be followed in every case by the JCC in calculating and awarding attorney's fees, based on the amount of benefits recovered by the claimant. The statute does not allow for any consideration of whether the fee is reasonable or any way for the JCC or the judiciary on review to alter the fee, even if the resulting fee is grossly inadequate—

or grossly excessive—in comparison to the amount of time reasonably and necessarily expended to obtain the benefits.

Stated another way, the statute establishes a conclusive irrebuttable presumption that the formula will produce an adequate fee in every case. This is clearly not true, and the inability of any injured worker to challenge the reasonableness of the fee award in his or her individual case is a facial constitutional due process issue.

In considering the constitutionality of the statute, we do not view the absolute limitation from the point of view of the attorney's rights, because the attorney always has the option to refuse representation, especially in complex low-value claims. Rather, we view the conclusive irrebuttable presumption in the context of the complete frustration of the entire workers' compensation scheme designed to provide workers with "full medical care and wage-loss payments for total or partial disability regardless of fault and without the delay and uncertainty of tort litigation." Martinez v. Scanlan, 582 So. 2d 1167, 1172 (Fla. 1991). We accordingly reject the argument that Castellanos, as the claimant rather than the attorney, lacks standing to raise the constitutional violation.

As the First District has explained, the injured worker, rather than the attorney, is the "true party in interest." Pilon, 574 So. 2d at 1201. A "barrier to review a decision to award a fee," the First District stated in Pilon, "could

ultimately result in a net loss of attorneys willing to represent workers' compensation claimants." Id. This in turn would result "in a chilling effect on claimants' ability to challenge employer/carrier decisions to deny claims for benefits and disrupt the equilibrium of the parties' rights intended by the legislature in enacting section 440.34." Id.

Because Castellanos has standing to challenge the constitutionality of the statute, we turn to the merits of his argument. This Court has set forth the following three-part test for determining the constitutionality of a conclusive statutory presumption, such as the fee schedule provided in section 440.34: (1) whether the concern of the Legislature was "reasonably aroused by the possibility of an abuse which it legitimately desired to avoid"; (2) whether there was a "reasonable basis for a conclusion that the statute would protect against its occurrence"; and (3) whether "the expense and other difficulties of individual determinations justify the inherent imprecision of a conclusive presumption." Recchi, 692 So. 2d at 154 (citing Markham v. Fogg, 458 So. 2d 1122, 1125 (Fla. 1984)).

In Recchi, this Court fully adopted the reasoning of the First District, which concluded that a statute violated the constitutional right to due process where it provided no opportunity for an employee working in a drug-free workplace program to rebut the presumption that the intoxication or influence of drugs

- 26 -

contributed to his or her injury.  Id.  "According to the district court of appeal, the irrebuttable presumption failed the three-pronged test because the expense and other difficulties of individual determinations did not justify the inherent imprecision of the conclusive presumption."  Id. (citing Hall v. Recchi Am. Inc., 671 So. 2d 197, 201 (Fla. 1st DCA 1996)).

The same, and more, can be said of the conclusive presumption in section 440.34.  We address each prong of the due process test to explain why.

**1. Whether the Concern of the Legislature was Reasonably Aroused by the Possibility of an Abuse Which it Legitimately Desired to Avoid**

As to the first prong, one of the Legislature's asserted justifications for the fee schedule is to standardize fees.  See Alderman v. Fla. Plastering, 805 So. 2d 1097, 1100 (Fla. 1st DCA 2002) ("Section 440.34(1), Florida Statutes[,] reflects a legislative intent to standardize attorney's fee awards in workers' compensation cases.").  The conclusive presumption certainly does that, although it does so in a manner that lacks any relationship to the amount of time and effort actually expended by the attorney.  As the First District has recognized, a fee schedule has typically been considered merely a starting point in determining an appropriate fee award.  See, e.g., Fumigation Dep't v. Pearson, 559 So. 2d 587, 590 (Fla. 1st DCA 1989) ("For purposes of determining an attorney's fee award under section 440.34(1), Florida Statutes, a starting point in the analysis is the amount of benefits obtained for the claimant by his attorney."); Martin Marietta Corp. v. Glumb, 523

So. 2d 1190, 1195 (Fla. 1st DCA 1988) ("Although the amount of benefits obtained is a significant factor, it is not determinative of the maximum amount that can be awarded as a fee.").

To the extent the Legislature was also concerned about the excessiveness of attorney's fee awards, however, this is not a reasonable basis for the unyielding formulaic fee schedule. Other factors, such as Rule Regulating The Florida Bar 4-1.5, already prevent against excessive fees. That Rule provides a number of factors to be considered as a guide to determining a reasonable fee, including, among many others, "the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly." R. Reg. Fla. Bar 4-1.5(b)(1)(A). In fact, since Lee Engineering, this Court has made clear that it does not condone excessive fee awards.

The effect of the limitation on the fee amounts paid to claimants' attorneys is revealed in the mandatory annual reporting of all attorney's fees to the Office of the Judges of Compensation Claims, as required by section 440.345, Florida Statutes. The report demonstrates the one-sided nature of the fees paid, with claimants' attorneys consistently receiving a lower percentage of the total fees than defense attorneys and the gap only increasing over the past decade:

| Fiscal Year | Aggregate Fees | Claimant % | Defense % |
| --- | --- | --- | --- |
| 02-03 | $430,705,423 | 48.91% | 51.09% |
| 03-04 | $446,472,919 | 48.23% | 51.77% |
| 04-05 | $475,215,605 | 44.43% | 55.57% |
| 05-06 | $507,781,830 | 41.04% | 58.96% |
| 06-07 | $478,640,476 | 39.95% | 60.05% |
| 07-08 | $459,202,630 | 41.09% | 58.91% |
| 08-09 | $459,324,903 | 39.55% | 60.45% |
| 09-10 | $456,566,882 | 38.77% | 61.23% |
| 10-11 | $428,036,787 | 36.70% | 63.30% |
| 11-12 | $416,870,962 | 36.67% | 63.33% |
| 12-13 | $418,775,099 | 36.27% | 63.73% |

State of Fla. Div. of Admin. Hearings, 2012-2013 Annual Report of the Office of the Judges of Compensation Claims at 31. Further, claimants' attorneys are prohibited by statute from negotiating a different fee with the claimant, and the JCC is precluded from approving a different fee—even if the negotiated rate would actually produce a more reasonable fee than the statutory fee schedule. See § 440.34(1), Fla. Stat. ("The judge of compensation claims shall not approve a compensation order, a joint stipulation for lump-sum settlement, a stipulation or

agreement between a claimant and his or her attorney, or any other agreement related to benefits under this chapter which provides for an attorney's fee in excess of the amount permitted by this section."). In fact, it is a <u>crime</u> for an attorney to accept any fee not approved by the JCC, which is of course constrained to award a fee only pursuant to the statutory fee schedule. <u>See</u> § 440.105(3)(c), Fla. Stat. ("It is unlawful for any attorney or other person, in his or her individual capacity or in his or her capacity as a public or private employee, or for any firm, corporation, partnership, or association to receive any fee or other consideration or any gratuity from a person on account of services rendered for a person in connection with any proceedings arising under this chapter, unless such fee, consideration, or gratuity is approved by a judge of compensation claims or by the Deputy Chief Judge of Compensation Claims.").[4]

## 2. Whether There was a Reasonable Basis for a Conclusion That the Statute Would Protect Against its Occurrence

---

4. We note that the First District Court of Appeal recently concluded in an as-applied constitutional challenge to sections 440.105 and 440.34 that the restrictions in those sections are unconstitutional violations of a claimant's right to free speech, free association, petition, and right to form contracts, and held "that the criminal penalties of section 440.105(3)(c), Florida Statutes, are unenforceable against an attorney representing a workers' compensation client seeking to obtain benefits under chapter 440, as limited by other provisions." <u>Miles v. City of Edgewater Police Dep't</u>, No. 1D15-0165, at 25 (Fla. 1st DCA Apr. 20, 2016). The issue of the constitutionality of that provision is not before us.

Even assuming, however, that the first prong of the due process test is satisfied because the Legislature desired to avoid excessive fees, there is no reasonable basis to assume that the conclusive fee schedule actually serves this function—as required by the second prong of the test. Excessive fees can still result under the fee schedule, just as inadequate ones can—for instance, in a simple and straightforward case where the claimant obtains a substantial amount of benefits. See Murray, 994 So. 2d at 1057. The fee schedule does nothing to adjust fees downward when the recovery is high, even if the time required to obtain significant benefits was relatively minor and the resulting fee is actually excessive.

As this Court stated in Murray:

> In some cases such as the present case, the amount of benefits is small, but the legal issues are complex and time consuming, and require skill, knowledge, and experience to recover the small but payable benefits. In other cases, the amount of benefits is substantial, but the legal issues are simple and direct, and do not require exceptional skill, knowledge, and experience. In the former case, a mandatory, rigid application of the formula results in an inadequate fee; in the latter, such application of the formula results in an excessive fee.

Id. at 1057 n.4.

The First District has also observed that a customary fee based on an hourly rate is likely to be more significant in a case in which the value of the attorney's services greatly exceeds the financial benefit obtained on behalf of the client. See Alderman, 805 So. 2d at 1100. For example, the work necessary to establish a

connection between chemical exposure and respiratory illness might not bear a reasonable relationship to the benefit obtained, and to apply the statutory formula in such a case might result in a fee that is inadequate and unfair. See Glumb, 523 So. 2d at 1195. In other words, the elimination of any authority for the JCC or the judiciary on review to alter the fee award completely frustrates the purpose of the workers' compensation scheme.

### 3. Whether the Expense and Other Difficulties of Individual Determinations Justify the Inherent Imprecision of a Conclusive Presumption

But even if none of that were true, the third prong of the test for evaluating a conclusive presumption—that the feasibility of individual assessments of what constitutes a reasonable fee in a given case must justify the inherent imprecision of the conclusive presumption—certainly weighs heavily against the constitutionality of the fee schedule. Indeed, the JCC in this case actually made these individual determinations, but the inherent imprecision of the conclusive presumption prevented both the JCC and the First District from doing anything about the unreasonableness of the resulting fee.

Courts have, in fact, long operated under the view that the fee schedule was merely a starting point, and judges of compensation claims have determined, awarded, and approved attorney's fees without undue expense or difficulty to avoid unfairness and arbitrariness since the reasonable attorney's fee provision was adopted in 1941. Under prior versions of the statutory scheme, the JCC considered

legislatively enumerated factors, and, after the deletion of these factors, continued to consider whether the fee was reasonable and not excessive.  See, e.g., S. Bell Tel. & Tel. Co. v. Rollins, 390 So. 2d 93, 95 (Fla. 1st DCA 1980); E. Coast Tire Co. v. Denmark, 381 So. 2d 336, 339-40 (Fla. 1st DCA 1980).  This type of review to control abuse, limit excessive fees, and award reasonable fees provides no basis for concern about abuse.

The cases cited in opposition are readily distinguishable.  Although the United States Supreme Court held that the unreasonably low fee provisions at issue in those cases passed constitutional muster despite the existence of a fee schedule, the judiciary still had discretionary authority to raise or lower the final fee according to articulated standards—unlike the conclusive presumption established by section 440.34.

For example, the Longshore and Harbor Workers' Compensation Act (LHWCA), the federal statutory workers' compensation scheme, which provides benefits to maritime workers, prohibits an attorney from receiving a fee unless approved by the appropriate agency or court.  This provision has been upheld by the United States Supreme Court.  See U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 721-26 (1990) (upholding the LHWCA provision, as incorporated into the Black Lung Benefits Act of 1972, against Fifth Amendment Due Process challenge).

Unlike the conclusive fee schedule in section 440.34, however, the Code of Federal Regulations creates factors to guide the adjudicator in awarding a fee "reasonably commensurate with the necessary work done." Triplett, 494 U.S. at 718. In other words, the fee provision in the LHWCA does not establish a conclusive irrebuttable presumption without consideration of whether the fee is "reasonable," but actually allows for the award of a "reasonable attorney's fee"— the precise constitutional problem with section 440.34.

In addition, in the federal cases cited in Triplett, the fees were intentionally set low due to the simple and non-adversarial nature of the services required—a far cry from the complex nature of Florida's current workers' compensation system. Indeed, Florida's workers' compensation law has become increasingly complex over the years. As a result of the complexity of the statutory scheme, the JCC specifically concluded in this case that it was "highly unlikely that [Castellanos] could have succeeded and obtained the favorable results he did without the assistance of capable counsel."

The stated goal of the workers' compensation system remains to this date the "quick and efficient delivery of disability and medical benefits to an injured worker" so as "to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." § 440.015, Fla. Stat. This case, and many others like it, demonstrate that despite the stated goal, oftentimes the worker experiences

delay and resistance either by the employer or the carrier.[5]  Without the likelihood

of an adequate attorney's fee award, there is little disincentive for a carrier to deny

benefits or to raise multiple defenses, as was done here.  This is the exact opposite

of the original goal of the attorney's fee provision, as this Court recognized long

ago.  See Ohio Cas. Grp., 350 So. 2d at 470 ("[I]n adding attorney's fees to the

injured worker's compensation award, Section 440.34, Florida Statutes (1975),

discourages the carrier from unnecessarily resisting claims in an attempt to force a

settlement upon an injured worker.").

While the E/C's attorney is adequately compensated for the hours

reasonably expended to unsuccessfully defend the claim, as here, the claimant's

attorney's fee may be reduced to an absurdly low amount, such as the $1.53 hourly

rate awarded to the attorney for Castellanos.  In effect, the elimination of any

---

5. Several related cases arising out of the First District, which are currently pending in this Court, illustrate that this is not an isolated case.  In each of these cases, there was either an outright denial of benefits or multiple defenses raised by the E/C, and in each case, the attorney for the E/C expended a number of hours equal to or exceeding the hours expended by the claimant's attorney.

For example, in Diaz v. Palmetto General Hospital, No. SC14-1916 (Fla. Apr. 28, 2016), the statutory fee award was $13.28 per hour for 120 hours of work deemed to be necessarily and reasonably expended by the attorney for the claimant.  The E/C's attorney spent 175 hours litigating the case, which was found to be a reasonable amount of time given its complex nature.  Just as in this case, the JCC in Diaz found that the injured worker would not have recovered benefits without the aid and assistance of an attorney.

requirement that the fee be "reasonable" completely eviscerates the purpose of the attorney's fee provision and fails to provide any penalty to the E/C for wrongfully denying or delaying benefits in contravention to the stated purpose of the statutory scheme.

And although there is a "mutual renunciation of common-law rights and defenses by employers and employees alike," § 440.015, Fla. Stat., the employer under the workers' compensation law has the prerogative to raise a whole host of defenses to denying benefits, while the employee is at the mercy of the E/C in being required to see the doctors that are chosen by the E/C. As this case shows, to navigate the current workers' compensation system, after a denial by the E/C of benefits, would be an impossibility without the assistance of an attorney. The JCC explicitly found as much in this case.

Virtually since its inception, the right of a claimant to obtain a reasonable prevailing party attorney's fee has been central to the workers' compensation law. While the incentive for an attorney to represent a claimant in a relatively high-value case is readily apparent, the exact opposite is true in a low-value complex case, such as this one.

But the conclusive fee schedule prevents all injured workers—whether they have small-value or high-value claims—from presenting evidence to prove that the fee is inadequate in any given case. Without the ability of the attorney to present,

and the JCC to determine, the reasonableness of the fee award and to deviate where necessary, the risk is too great that the fee award will be entirely arbitrary, unjust, and grossly inadequate. We therefore conclude that the statute violates the state and federal constitutional guarantees of due process.[6]

## C. Statutory Revival

Having concluded that the statute is unconstitutional, we must consider the remedy until the Legislature acts to cure the constitutional infirmity. "Florida law has long held that, when the legislature approves unconstitutional statutory language and simultaneously repeals its predecessor, then the judicial act of striking the new statutory language automatically revives the predecessor unless it, too, would be unconstitutional." B.H. v. State, 645 So. 2d 987, 995 (Fla. 1994).

Accordingly, our holding that the conclusive fee schedule in section 440.34 is unconstitutional operates to revive the statute's immediate predecessor. This is the statute addressed by this Court in Murray, where we construed the statute to provide for a "reasonable" award of attorney's fees.

With Murray as a guide, a JCC must allow for a claimant to present evidence to show that application of the statutory fee schedule will result in an unreasonable

_____

6. Although Castellanos has also raised a strong argument based on the state constitutional right of access to courts in article I, section 21, of the Florida Constitution, because we conclude that the due process challenge is dispositive, we do not address the many other constitutional challenges to the statute.

fee. We emphasize, however, that the fee schedule remains the starting point, and that the revival of the predecessor statute does not mean that claimants' attorneys will receive a windfall. Only where the claimant can demonstrate, based on the standard this Court articulated long ago in Lee Engineering, that the fee schedule results in an unreasonable fee—such as in a case like this—will the claimant's attorney be entitled to a fee that deviates from the fee schedule.

## III. CONCLUSION

The right of an injured worker to recover a reasonable prevailing party attorney's fee has been a key feature of the state's workers' compensation law since 1941. Through the 2009 enactment of a mandatory fee schedule, however, the Legislature has created an irrebuttable presumption that every fee calculated in accordance with the fee schedule will be reasonable to compensate the attorney for his or her services. The $1.53 hourly rate in this case clearly demonstrates that not to be true.

We conclude that the mandatory fee schedule is unconstitutional as a violation of due process under both the Florida and United States Constitutions. Accordingly, we answer the rephrased certified question in the affirmative, quash the First District's decision upholding the patently unreasonable fee award, and direct that this case be remanded to the JCC for entry of a reasonable attorney's fee.

- 38 -

It is so ordered.

LABARGA, C.J., and QUINCE, and PERRY, JJ., concur.
LEWIS, J., concurs with an opinion.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

LEWIS, J., concurring.

Over years of operation, construction, writing and rewriting, the Florida

workers' compensation system has become increasingly complex and difficult to

navigate without the assistance of one having specialized training.  It is fair to say

that the system once designed and intended to fairly distribute and allocate risk and

economic burdens with reduced conflict and confrontation has rapidly expanded

into an arena of such conflict and confusion that legal counsel is not only helpful,

but it is now essential for the protection of workers.  This need for representation

has been well recognized as Florida's workers' compensation system has moved

from the once quick and efficient delivery of necessary medical treatment and

wages into the current maze of reduced benefits and a contentious process for the

recovery of those benefits.

Now the workers' compensation program has emasculated the attorney fee

provision to the extent that a mandatory fee schedule creates an irrebuttable

presumption with regard to attorney fees that eliminates any consideration of

- 39 -

whether the attorney fee is adequate for workers to actually obtain competent counsel in these cases. Thus, circumstances such as this case result in providing counsel attorney fees in an amount of $1.53 per hour, which is clearly unreasonable and insufficient to afford workers the ability to secure competent counsel, and the irrebuttable or conclusive presumption with regard to attorney fees violates the three-pronged analysis applicable to determine constitutionality here. This irrebuttable or conclusive presumption violates the constitutional right to due process. See Recchi America Inc. v. Hall, 692 So. 2d 153 (Fla. 1997); Markham v. Fogg, 458 So. 2d 1122 (Fla. 1984).

Additionally, where workers face the exclusive remedy under Florida's workers' compensation statutes, but are then denied the ability to secure competent counsel due to the totally unreasonable attorney fees provision, the legislation operates to unconstitutionally deny Florida workers access to our courts. As stated in Kluger v. White, 281 So. 2d 1, 4 (Fla. 1973):

> [W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries . . . .

CANADY, J., dissenting.

The fee schedule in section 440.34, Florida Statutes, embodies a policy determination by the Legislature that there should be a reasonable relationship between the value of the benefits obtained in litigating a workers' compensation claim and the amount of attorney's fees the employer or carrier is required to pay to the claimant. This policy violates none of the constitutional provisions on which the petitioner relies. Accordingly, I dissent from the majority's invalidation of this statutory provision.

In reaching the conclusion that the statute violates due process, the majority fails to directly address the actual policy of the statute. Instead, the majority assumes—without any reasoned explanation—that due process requires a particular definition of "reasonableness" in the award of statutory attorney's fees. The definition assumed by the majority categorically precludes the legislative policy requiring a reasonable relationship between the amount of a fee award and the amount of the recovery obtained by the efforts of the attorney. Certainly, this legislative policy may be subject to criticism. But there is no basis in our precedents or federal law for declaring it unconstitutional.

Although the Legislature long ago made provision for the award of attorney's fees to workers' compensation claimants, we have never held that—as the majority asserts—"a reasonable attorney's fee [is] the linchpin to the

- 41 -

constitutionality of the workers' compensation law." Majority op. at 6. And we have never held that it is unreasonable to require that an award of attorney's fees be commensurate with the benefits obtained. The policy adopted by the Legislature in section 440.34 may be subject to criticism, but it unquestionably has a rational basis.

This case illustrates the rationale for the legislative policy requiring that a fee award be commensurate with the recovery obtained. Here, the value of the claim was $822.70, and the claimant sought attorney's fees in the amount of $36,817.50—a fee nearly 45 times the amount of the recovery. Of course, an argument can be made that an award of fees in an amount so disproportionate to the recovery is necessary and appropriate to allow the effective litigation of a complex low-value claim. And a counter argument can be made that such disproportionate fee awards impose an unwarranted social cost. But the question for this Court is not which side of this policy debate has the best argument, but whether the policy adopted by the Legislature violates some constitutional requirement.

Our precedents and federal law provide no authority to support the proposition that due process—or any other constitutional requirement relied on by the petitioner—requires that statutory fee awards fully compensate for the effective litigation of all claims. Under the American Rule, parties must ordinarily bear the

- 42 -

expense of obtaining their own legal representation. Inevitably, under the American Rule, obtaining the assistance of an attorney for the litigation of low-value claims—whether simple or complex—often is not feasible. Given the undisputed constitutionality of the American Rule, there is no impediment to a legislative policy requiring that the amount of statutory fee awards be reasonably related to the amount of the recovery obtained. See Florida Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1149 (Fla. 1985) ("We find that an award of attorney fees to the prevailing party is 'a matter of substantive law properly under the aegis of the legislature,' in accordance with the long-standing American Rule adopted by this Court.")

The majority's reliance on the "three-part test for determining the constitutionality of a conclusive statutory presumption," majority op. at 26, to invalidate the statute is unjustified because the majority misunderstands the test and misapplies it in the context presented by this case. The majority's decision ignores the background of the three-part test. When that background is considered, it becomes abundantly clear that the majority has misapplied the test in this case.

The three-part test was first referred to by this Court in Gallie v. Wainwright, 362 So. 2d 936, 943-45 (Fla. 1978), where we rejected a claim that statutory and rule provisions limiting the availability of bond pending appeal by criminal defendants established an irrebuttable presumption that transgressed the

requirements of due process. The three-part test referred to in <u>Gallie</u> was derived

from <u>Weinberger v. Salfi</u>, 422 U.S. 749, 752-53 (1975), which reversed a lower

court's decision "invalidating [9-month] duration-of-relationship Social Security

eligibility requirements for surviving wives and stepchildren of deceased wage

earners." The lower court had held the statutory requirements invalid on the

ground that they constituted an irrebuttable presumption that violated due process.

In <u>Salfi</u>, the three parts of the test utilized by the majority here were simply

elements considered by the Court in determining whether the challenged statutory

provisions comported with "standards of legislative reasonableness." 422 U.S. at

at 776-77. <u>Salfi</u> relied on "[t]he standard for testing the validity of Congress'

Social Security classification" set forth in <u>Flemming v. Nestor</u>, 363 U.S. 603, 611

(1960): " 'Particularly when we deal with a withholding of a noncontractual

benefit under a social welfare program such as (Social Security), we must

recognize that the Due Process Clause can be thought to interpose a bar only if the

statute manifests a patently arbitrary classification, utterly lacking in rational

justification.' " <u>Salfi</u> 422 U.S. at 768. <u>Salfi</u> also cited <u>Richardson v. Belcher</u>, 404

U.S. 78, 84 (1971), which, in rejecting a due process challenge to a provision of

the Social Security Act, said: " 'If the goals sought are legitimate, and the

classification adopted is rationally related to the achievement of those goals, then

the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.' " Salfi, 422 U.S. at 768-69.

Accordingly, the Salfi Court's reasoning was—unlike the majority's reasoning here—highly deferential to the legislative judgment underlying the challenged statutory provision:

> Under those standards [of legislative reasonableness], the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions . . . . Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is [1] whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, [2] could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and [3] that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule. We conclude that the duration-of-relationship test meets this constitutional standard.

Salfi, 422 U.S. at 777.

The particular elements of the rational basis analysis in Salfi were based on the particular justification advanced by the Social Security Administration for the duration-of-relationship requirement—that is, as a "general precaution against the payment of benefits where the marriage was undertaken to secure benefit rights." 422 U.S. at 780. The Court concluded that this concern was undoubtedly "legitimate," that it was "undoubtedly true that the duration-of-relationship

- 45 -

requirement operates to lessen the likelihood of abuse through sham relationships entered in contemplation of imminent death" and that "Congress could rationally have concluded that any imprecision from which [the requirement] might suffer was justified by its ease and certainty of operation." Id.

It is readily apparent that the framework of the three-part analysis does not fit the context presented by the case on review here. Section 440.34 does not embody a prophylactic requirement akin to the eligibility requirement in Salfi. Section 440.34 thus does not present any question of "inherent imprecision." Id. at 777. By definition, the rule of proportionality embodied in the statute precisely and comprehensively protects against fee awards disproportionate to the recovery obtained. The award of such disproportionate fees is the very evil that the Legislature sought to eliminate. In its application of the inapposite three-part test, the majority simply ignores this fundamental point. Beyond that, the majority applies the elements of the test in a manner totally contrary to the manner in which Salfi applied them and totally at odds with the general rule "that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Id. at 768 (citing Nestor, 363 U.S. at 611).

It should not be ignored that Salfi reversed the lower court's application of the irrebuttable presumption doctrine and took pains to distinguish and limit earlier

cases that had relied on that doctrine to invalidate legislation. 422 U.S. at 771-72.

In doing so, the Court expressed its strong concern that an expansive application of

the irrebuttable presumption doctrine—like the application by the lower court—

would turn that doctrine "into a virtual engine of destruction for countless

legislative judgments which have heretofore been thought wholly consistent with

the Fifth and Fourteenth Amendments to the Constitution." Id. at 772. Underlying

this concern is the reality that any legislative classification can be characterized as

an irrebuttable presumption. The majority here has applied a test extracted from

Salfi in a manner that flies in the face of the central concern expressed by the Court

in Salfi justifying its reversal of the lower court. The line of reasoning adopted by

the majority unquestionably has the potential to become a "virtual engine of

destruction for countless legislative judgments" previously understood to be

constitutional.

Although some of our prior cases have relied on the three-part test derived

from Salfi, we have never applied that test to find a statutory provision

unconstitutional in circumstances that have any similarity to the circumstances

presented here. In Recchi America Inc. v. Hall, which is briefly discussed by the

majority, the underlying legislative policy—as expressly stated in the statute—was

that no workers' compensation would be payable for an injury occasioned

primarily by the employee's intoxication. With that legislative policy in view, we

upheld the invalidation of a statutory irrebuttable presumption that an employee's injury was caused primarily by intoxication if the employee was working in a workplace with a drug-free workplace program and tested positive for alcohol or drugs at the time of injury. We concluded that "the conclusive presumption created a high potential for inaccuracy" and emphasized that the injured worker in the case "was injured when a coworker tripped and jabbed a long steel apparatus into the back of his head." Recchi, 692 So. 2d at 154-55.

Leaving aside the question of whether our analysis in Recchi is consistent with Salfi—which we did not mention—Recchi is readily distinguishable from the case now on review. Here, there is no expressly stated legislative policy regarding attorney's fees that might be implemented through a process of individualized determinations analogous to the expressly stated legislative policy regarding causation that was addressed in Recchi. No process of individualized factual determinations could better serve the legislative purpose of establishing proportionality between fee awards and recoveries obtained than does the statutory fee schedule.

Finally, I agree with Justice Polston that the majority "turns this Court's well-established precedent regarding facial challenges on its head[.]" Dissenting op. at 53 (Polston, J.)

I would answer the rephrased certified question in the negative and approve the decision of the First District.

POLSTON, J., concurs.

POLSTON, J., dissenting.

There is no conclusive presumption. The majority has rewritten the statute to avoid the standard governing facial challenges. I respectfully dissent.

In 2008, this Court issued an opinion interpreting the attorney's fees provision of Florida's workers' compensation law as amended in 2003 to include a reasonableness requirement. See Murray v. Mariner Health, 994 So. 2d 1051 (Fla. 2008) (interpreting section 440.34, Florida Statutes (2003)). This Court in Murray determined that the plain language of the statute was ambiguous regarding reasonableness because subsection (1) did not include the term reasonable when providing for a mandatory fee schedule but subsection (3) did employ the term. Id. at 1061. Such ambiguity necessitated a judicial interpretation utilizing the rules of statutory construction. Id. In response to this Court's decision in Murray, the Legislature amended the statute to eliminate any ambiguity, which the Legislature is constitutionally authorized to do. Specifically, in 2009, the Legislature eliminated all references to reasonableness, rendering moot this Court's 2008 interpretation of the provision as including a reasonableness requirement. See ch. 2009-94, § 1, Laws of Fla. However, with today's decision, the majority reinstates

its prior 2008 holding by turning facial constitutional review completely on its head and rewriting the 2009 statute.

To be clear, I am not saying that a constitutional challenge to section 440.34, Florida Statutes (2009), could never succeed. In fact, I would not foreclose the possibility of a successful as-applied constitutional challenge to the attorney's fees provision based upon access to courts, depending upon the particular facts of the case involved. However, as acknowledged during oral argument, the petitioner did not raise any as-applied challenge to the statute in this Court, even given what would certainly seem to be the rather egregious facts of his case. Instead, the petitioner raised a facial challenge that lacks any merit under our precedent.

In a facial challenge, this Court has emphasized that "our review is limited." Abdool v. Bondi, 141 So. 3d 529, 538 (Fla. 2014). Specifically, "we consider only the text of the statute." Id. "For a statute to be held facially unconstitutional, the challenger must demonstrate that no set of circumstances exists in which the statute can be constitutionally applied." Id.; see also Cashatt v. State, 873 So. 2d 430, 434 (Fla. 1st DCA 2004) ("A facial challenge to a statute is more difficult than an 'as applied' challenge, because the challenger must establish that no set of circumstances exists under which the statute would be valid."); cf. Accelerated Benefits Corp. v. Dep't of Ins., 813 So. 2d 117, 120 (Fla. 1st DCA 2002) ("In considering an 'as applied' challenge, the court is to consider the facts of the case

at hand."). Moreover, "when we review the constitutionality of a statute, we accord legislative acts a presumption of constitutionality and construe the challenged legislation to effect a constitutional outcome when possible." Abdool, 141 So. 3d at 538 (citing Fla. Dep't of Revenue v. Howard, 916 So. 2d 640, 642 (Fla. 2005)). "As a result, [an] Act will not be invalidated as facially unconstitutional simply because it could operate unconstitutionally under some [] circumstances." Id.

Applying this well-established precedent, the facial challenge at issue here fails, even assuming that adequate and reasonable attorney's fees are constitutionally required. There are some workers' compensation cases where "the amount of benefits is substantial, but the legal issues are simple and direct, and do not require exceptional skill, knowledge, and experience." Murray, 994 So. 2d at 1057 n.4. In these high pay-off, low-effort cases, the statutory fee schedule could provide reasonable compensation for a prevailing claimant's attorney. After all, section 440.34(1), Florida Statutes (2009), provides that the attorney's fee must equal 20 percent of the first $5,000 in benefits, 15 percent of the next $5,000, 10 percent of the remaining during the first 10 years of the claim, and 5 percent after 10 years. Therefore, because there are a set of circumstances under which the attorney's fees provision could be constitutionally applied, the provision is facially constitutional under our precedent. See Fla. Dep't of Revenue v. City of

- 51 -

Gainesville, 918 So. 2d 250, 265 (Fla. 2005) ("[I]n a facial constitutional challenge, we determine only whether there is any set of circumstances under which the challenged enactment might be upheld.").

The majority reaches a contrary holding, not by applying our precedent regarding facial challenges, but by ignoring it altogether and never even citing the well-established standard. The majority just declares that the attorney's fees provision in Florida's workers' compensation law includes an irrebuttable presumption of reasonableness, and then it holds that this presumption is a violation of procedural due process under both the United States and Florida constitutions. But the 2009 provision does not mention reasonableness at all and, therefore, does not include any such presumption, irrebuttable or otherwise. Cf. Recchi America Inc. v. Hall, 692 So. 2d 153 (Fla. 1997) (declaring an irrebuttable presumption invalid as a violation of due process where the statute plainly and expressly included a presumption that an accident was primarily caused by the worker's intoxication if that worker's urine test revealed the presence of alcohol or drugs). Section 440.34 as plainly written prescribes a mandatory schedule for prevailing party attorney's fees. It never states that those attorney's fees have to be or should be considered reasonable. In fact, it was specifically amended post-Murray to eliminate the term reasonable, which eliminates the ability of this Court to say that the statute includes anything about reasonableness. And because the

statute does not include any presumption of reasonableness (let alone a conclusive presumption), the majority's analysis of the constitutionality of that non-existent presumption is erroneous.

The majority's decision turns this Court's well-established precedent regarding facial challenges on its head and accomplishes by the backdoor what it could not do by the front door. The majority is really deciding that reasonable attorney's fees are constitutionally required. But by rewriting the 2009 statute to include a conclusive presumption, the majority avoids the fact that the state and federal due process clauses do not require Florida's workers' compensation scheme to include reasonable prevailing party attorney's fees. The majority also invalidates a statute that might sometimes, but not all the time, be applied in a manner that denies reasonable attorney's fees. However, this Court's precedent regarding facial challenges requires that such a statute be upheld. See State v. Ecker, 311 So. 2d 104, 110 (Fla. 1975) ("While the statute might be unconstitutionally applied in certain situations, this is no ground for finding the statute itself [facially] unconstitutional.").

Accordingly, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D12-3639

Richard Anthony Sicking, Mark Andrew Touby, and Richard Eric Chait of Touby, Chait & Sicking, PL, Coral Gables, Florida; and Michael Jason Winer of the Law Office of Michael J. Winer, P.A., Tampa, Florida,

for Petitioner

Raoul G. Cantero, III and David P. Draigh of White & Case LLP, Miami, Florida,

for Respondents

Mark Lawrence Zientz of the Law Offices of Mark L. Zientz, P.A., Miami, Florida,

for Amicus Curiae Workers' Injury Law and Advocacy Group

Richard W. Ervin, III of Fox & Loquasto, P.A., Tallahassee, Florida, and Susan Whaley Fox of Fox & Loquasto, P.A., Orlando, Florida,

for Amicus Curiae Florida Justice Association

Christopher John Smith, Tampa, Florida,

for Amicus Curiae Workers' Compensation Section of The Florida Bar

William J. McCabe, Longwood, Florida,

for Amicus Curiae Voices, Inc.

Geoffrey Bichler of Bichler, Kelley, Oliver & Longo, PLLC, Maitland, Florida,

for Amici Curiae Florida Fraternal Order of Police, Florida Police Benevolent Association, and International Union of Police Associations

Noah Scott Warman of Sugarman & Susskind, P.A., Coral Gables, Florida,

for Amicus Curiae Florida Professional Firefighters, Inc.

Kimberly Ann Hill of Kimberly A. Hill, P.L., Fort Lauderdale, Florida, and Kenneth Brian Schwartz of Kenneth Schwartz, P.A., West Palm Beach, Florida,

    for Amicus Curiae Florida Workers' Advocates

Mark Kenneth Delegal and Matthew Harrison Mears of Holland & Knight LLP, Tallahassee, Florida; and William Wells Large, Tallahassee, Florida,

    for Amici Curiae Florida Justice Reform Institute and Florida Chamber of Commerce, Inc.

Rayford Huxford Taylor of Casey Gilson P.C., Atlanta, Georgia,

    for Amici Curiae Associated Industries of Florida, Inc., Associated Builders & Contractors, Florida Electric Cooperatives Assocation, Florida Retail Federation, Florida Roofing, Sheet Metal and Air Conditioning Contractors Association, Florida United Businesses Association, and Publix Supermarkets

Amy Lyn Koltnow and Maria Elena Abate of Colodny, Fass, Talenfeld, Karlinsky, Abate & Webb, P.A., Fort Lauderdale, Florida,

    for Amici Curiae Property Casualty Insurers Association of America, Florida Insurance Council, American Insurance Association, and National Association of Mutual Insurance Companies

Richard W. Ervin, III of Fox & Loquasto, P.A., Tallahassee, Florida, and Charles Holden Leo of the Law Offices of Charles H. Leo, P.A., Orlando, Florida,

    for Amicus Curiae Central Florida Trial Lawyers Association

Louis Paul Pfeffer, Jupiter, Florida,

    for Amicus Curiae National Employment Lawyers Association, Florida Chapter